PRENTISS D. CHENEY

*v.*

DAVID T. BONNELL.

1. LEASE—*sale under execution—growing crops.* Where a landlord, under a claim that a tenant has forfeited his lease by not performing its conditions, enters upon the premises and harvests and sells a crop of wheat sowed by the tenant, the landlord fails to acquire title to the grain unless he can establish a forfeiture of the lease.

2. TRESPASS—*to personal property.* Where a judgment creditor of a tenant sues out execution and levies on a growing crop of wheat sowed by the tenant, and it is sold and he becomes the purchaser under the execution, and the landlord harvests the wheat and sells it, claiming it as his own, on the ground that the tenant had forfeited his lease before the levy and sale, he will be liable to the purchaser under the execution if he fails to establish such a forfeiture.

3. FORFEITURE—*lease—evidence.* Where the forfeiture of a lease is claimed, it must be shown that the necessary acts to declare a forfeiture have been done by the landlord. A forfeiture will not be inferred because

there were grounds for declaring a forfeiture and an intention to declare a forfeiture, but all the requisite steps must be taken. A forfeiture can not be produced, unless there is notice that the tenancy has ended, a demand of possession and a notice to quit. The law does not favor such forfeitures, and will not imply them from slight circumstances.

4. FORCIBLE DETAINER—*evidence of a judgment in.* Where a judgment in forcible detainer is relied on as evidence that the tenant had been evicted and the lease terminated; mere verbal testimony that the landlord had recovered such a judgment, without showing service on, or appearance by the tenant, to the suit, is not sufficient to prove a binding judgment that will establish the termination of a lease.

5. CHATTEL MORTGAGE—*when void.* Where the creditor of a tenant sells growing crops sowed by the tenant, and becomes the purchaser, and the landlord of the tenant endeavors to justify the harvesting and sale of the wheat on the ground that he held a chattel mortgage on the same, and it appears that the mortgage was executed by the tenant in the absence of the landlord, while he was in another State, and without his knowledge, and the tenant swears it was made to prevent the judgment creditor from collecting his debt, although the landlord swears that it was agreed that it should be made before he left, to secure a note, and damages the tenant agreed to pay for failing to perform the covenants of the lease, but the tenant denied there was a forfeiture or any agreement to pay damages, and it appeared the note had been paid: *Held,* in such a conflict of evidence, when the jury found the mortgage was void, the finding of the jury would not be disturbed.

APPEAL from the Circuit Court of Jersey county; the Hon. CHARLES D. HODGES, Judge, presiding.

Messrs. KNAPP & HERDMAN, and Mr. JAMES W. ENGLISH, for the appellant.

Messrs. BROWN & EPLER, for the appellee.

Mr. JUSTICE WALKER delivered the opinion of the Court:

This was an action of trespass *de bonis asportatis,* brought by appellee, in the Jersey circuit court, against appellant, to recover the value of five hundred bushels of wheat. It appears that appellee recovered two judgments for different sums, before a justice of the peace, against one Edward McGown. On the same day of their rendition, executions were sworn out and levied on thirty acres of growing wheat

and one-third of eighteen acres of other growing wheat, which was sold by the constable and bought by appellee for $15. No question is raised on the regularity of the sale. It appears that at harvest appellant cut, threshed and sold the wheat, without the consent of appellee; that appellant was cognizant of the levy and sale of the wheat.

It also appears, that the land on which the wheat was grown belonged to appellant's wife; that McGown occupied the land under a lease executed in August, 1865, and had sown the wheat in the autumn of 1868, and was occupying the land when the levy and sale were made; that in January, 1869, McGown was dispossessed by a writ of forcible detainer; that appellant then resumed possession of the land, harvested and sold the wheat, which appellant testifies yielded $155, after deducting all expenses.

Appellant claims that McGown had failed to comply with the terms of the lease, and that there was a forfeiture of the lease, and that the wheat thereby became his, especially as it was agreed between him and the tenant that appellant had sustained damages to the amount of $250, which was agreed to by McGown, and for which he executed a note and a mortgage on the wheat during the absence of appellant in Ohio, without his knowledge, but in pursuance to a suggestion made by appellant before he left, that for fear McGown's creditors might seize the wheat, he should execute to him a mortgage to secure the damages, and a note he held for $53, which was also embraced in the mortgage.

It appears that McGown paid the note; but he denies in his testimony that he had forfeited the lease when the levy was made; that he had not performed the labor required by the lease because appellant had directed him not to do it. He denies that there was any damage sustained, or that he ever agreed there was, to the extent of $250, or that there had been a forfeiture of the lease. He testified that he gave the note and mortgage to prevent appellee from selling his property. Appellee testified that appellant informed him he did not claim

under the mortgage. Appellee denied making the statement, and says he only said, while trying to settle, he did not know whether the mortgage was good. On the trial below, the jury found a verdict for appellee for the sum of $182.18, upon which the court rendered a judgment.

The evidence, we think, fails to establish a forfeiture of the lease before the execution sale. The tenant expressly denies that there was any, and there seems to have been nothing said at the time appellant swears that it was agreed that a forfeiture had occurred, about the terms upon which McGown should continue to occupy the premises. So far as the evidence discloses the facts, the tenant continued on the place under the lease, and precisely as he did previously, until the following January. Although a forfeiture may have been spoken of, we find none of the steps taken by the landlord that are usually employed to manifest such an intention. No notice was given that the tenancy had terminated, with a demand of possession and a notice to quit. None of the usual steps were taken to terminate the lease; and we are of the opinion that there was not sufficient evidence that a forfeiture of the lease had been declared when the sale was made. That grounds for a forfeiture may have existed, may be true, but such grounds or a mere intention to declare it, will not suffice. The law does not favor forfeitures, and will not imply them from slight circumstances, but they must be formally and clearly declared. Nor does it appear, from the evidence, in the proceeding before the justice of the peace, in the forcible detainer suit, that there was jurisdiction to hear the case. The record of that proceeding was not produced, and the oral evidence fails to show that there was any service on, or appearance by, McGown. If there was not, then the judgment so far from being evidence that the term had been forfeited and the appellant had thus acquired the title to the wheat, was a nullity and proved nothing. For the want of this evidence, the question whether appellant became the owner of the wheat under a forfeiture, is. not presented by the record. Appellee purchased and acquired

McGown's title to the wheat, and it devolved upon appellant to show how it had been divested. This he has failed to do, and has not thus shown a defense.

As to the validity of the mortgage, it was a question for the jury. McGown testified it was made to cover his property and to hinder appellee in the collection of his debt, while appellant testifies it was given at his previous request, to secure the damages growing out of a failure to perform the terms of the lease, which had been agreed upon by him and McGown.

But the latter denies that there were any damages sustained, or agreed upon by him and appellee. In this conflict of evidence, it was for the jury to determine and say to which they would give credit. And, having found in favor of McGown, we should not feel warranted in disturbing their verdict, whatever we might have done had it not been passed upon by the jury.

It is the opinion of the majority of the court that the judgment of the court below be affirmed.

*Judgment affirmed.*