MORITZ J. DOBSCHUETZ *et al.*

*v.*

JOHN J. HOLLIDAY *et al.*

1. REAL ESTATE—*engine and machinery attached to, become part.* A steam engine, machinery and fixtures attached to the soil by a lessee thereof for the purpose of hoisting coal from mines situated thereon, including all boxes

| | |
|---|---|
| 82 | 371 |
| 28a | 376 |
| 82 | 371 |
| 36a | 257 |
| 37a | 70 |
| 82 | 371 |
| 138 | 498 |
| 38a | 495 |
| 82 | 371 |
| 143 | 379 |
| 143 | 383 |
| 145 | 246 |
| 82 | 371 |
| 148 | 170 |
| 82 | 371 |
| 153 | 512 |
| 82 | 371 |
| 61a | 464 |
| 82 | 371 |
| 65a | 629 |
| 82 | 371 |
| 166 | 386 |

and other necessary appliances connected therewith, become a part of the lessee's estate therein.

2. MECHANIC'S LIEN—*attaches to leasehold estate for work on machinery which lessee, under his lease, may remove.* Although, by the terms of a lease, the lessee has the privilege of removing all machinery and fixtures placed upon the leased premises, yet an engine and fixtures attached to the soil are a part of the estate itself until severed, and a mechanic or materialman, who, under a contract with the lessee, furnishes such engine and fixtures, and puts it up on the premises, is entitled to a mechanic's lien against the estate of the lessee on account thereof.

3. LEASEHOLD ESTATE—*mechanic's lien on, not affected by voluntary surrender to owner of the fee.* A voluntary surrender by a lessee of the leased premises to his landlord, before the expiration of his lease, can not affect a mechanic's lien upon the leasehold estate which attached whilst the lessee was the owner; and in such case, if the owner of the fee should neglect to discharge the lien, upon the consummation of a sale under the decree establishing it, he would be compelled to accept another tenant.

4. DECREE—*against owner of fee who accepts surrender of leasehold estate subject to mechanic's lien.* Where a lessee of land, whose estate only is sought to be subjected to a mechanic's lien, surrenders his estate to the owner of the fee, a decree establishing the lien may properly order that, in default of the payment of the amount of the lien by the lessee or the owner to whom he has surrendered, the interest of all the parties therein be sold; such a decree would be construed as applying to the interest of the parties in the leasehold estate, including the improvements for which the lien is established.

APPEAL from the Circuit Court of St. Clair county; the Hon. WILLIAM H. SNYDER, Judge, presiding.

Messrs. C. W. & E. L. THOMAS, for the appellants.

Messrs. WILDERMAN & HAMILL, and Mr. JAMES M. DILL, for the appellees.

Mr. JUSTICE SCOTT delivered the opinion of the Court:

Petitioners contracted with the lessee in possession of the premises described, to build for him an engine, and do other work in constructing the necessary apparatus for hoisting coal from the mines he was about to open in the demised lands. There was a definite agreement as to the amount to be paid for the engine, and the time and manner of payment were fixed,

but not as to the other articles to be furnished and the labor to be performed in setting the machinery. All other work was embraced in a different, contemporaneous agreement. One-half the contract price of the engine was to be paid in cash, during the progress of the work, and the other half, together with the amount and value of the other articles, to be paid in coal, at market rates, to be delivered in quantities, within one year from the completion of the work. The lessee having refused to deliver any more coal under his agreement, it is now sought to establish a mechanic's lien against his interest in the premises and the improvements for the balance due.

Under our statute, the lien given in favor of the mechanic or materialman is made to extend to an estate in fee, for life, for years, or any other estate, or any right of redemption, or other interest which the owner may have in the lot or land at the time of making the contract. R. S. 1874, chap. 82, sec. 2.

In this case the party with whom the contract was made was the owner of a leasehold estate limited in duration to twenty years, unless sooner terminated by the exhaustion of the coal in the mines demised. That interest it is sought to subject to the lien for the materials furnished and labor done in erecting the superstructure and apparatus for hoisting coal from the mines.

No variance exists between the contract alleged and the one proven. All the agreement between the parties was not reduced to writing. Only that part that related to the engine, the amount and manner of payment, was the subject of a written agreement, while the remaining portion, having reference to other materials to be furnished and labor to be performed in setting all the work in place on the premises, was by verbal contract.

One principal ground upon which the lien is resisted, so far as the engine is concerned, is, that it is personal property, and hence no lien exists under the statute. Whatever may have been the private agreement of the parties, it is very clear the engine, when set up and attached to the realty, as it was,

became a part of the estate the lessee had in the premises. No doubt the parties could agree among themselves they would treat the engine and other fixtures as personalty, but their private agreement could not change the character of the property, so far as third parties were concerned. The engine and superstructure, when attached to the soil, became a part of the estate of the lessee, and, unless expressly reserved, would pass to his grantee with the estate. *Ombony* v. *Jones*, 19 N. Y. 234.

Under the agreement of the parties, the lessee had the privilege of removing all machinery and fixtures used in and about the mines in prosecuting the work, but until severed they constituted a part of the estate itself. Of this we think there can be no question. No importance can be attached to that clause in the proposition to construct the engine "delivered aboard the cars at East St. Louis," in illustrating this branch of the case. It is a misapprehension to suppose those words indicate when the title to the property vested in the purchaser. All they mean, in that connection, is, that the makers, in addition to completing the engine, were, also, to deliver it on board the cars at East St. Louis, without additional charges above the contract price.

No grounds of forfeiture of the lease are shown by the evidence in the record. The witness—one of the lessors—states, "we declared a forfeiture and took possession;" but it is apprehended, under the decision in *Cheney* v. *Bonnell,* 58 Ill. 268, it was necessary to show that the facts warranted a declaration of forfeiture. Otherwise, the possession that followed will be treated as a surrender of the premises by the lessee to the lessors, and nothing more. The voluntary surrender to the owner of the fee can not affect the lien upon the estate of the lessee, which attached while he was the owner. Should the owners of the fee neglect to discharge the lien upon the consummation of the sale under the decree establishing it, they would be compelled to accept another tenant. After the surrender, the estate would still be subject to the burdens that rested upon it, as well as before. The merger

of the estate of the lessee with that of the owners of the fee would not destroy the previous lien. *Gaskill* v. *Tramter*, 3 Cal. 334.

Evidence offered shows, with sufficient clearness, petitioners did the work and furnished materials under the contract as alleged. The contract was with the owner, in the sense that term is used in the statute. As the materials and work became a part of the estate, no valid reason exists why petitioners should not have a lien for the unpaid balance due under the contract. It is the exact case where the statute gives the lien for the security of the mechanic and materialman.

It is insisted upon as error, the decree orders payment of the amount found due to be made by the tenant with whom the contract was made, or by the owners of the fee to whom the tenant has since surrendered the premises, and, in case of default of payment, all the interest of all the parties be sold. Only the leasehold estate, with the improvements made under the contract with the tenant, were sought to be subjected to the lien, and, construing the decree as having no broader scope and as only intended to embrace the estate of the lessee, which had become merged, by the surrender, with the estate of the owners of the fee, it was not irregular to decree that all the interests of all the parties in that estate be sold to satisfy the amount found due. That is all the court intended, as we understand the decree. With this limitation, which we think is plainly understood, the decree is strictly correct. *Kidder* v. *Aholtz*, 36 Ill. 478.

No order was made for an execution against the owners of the fee for any unpaid balance that might remain after the sale of the lessee's interest, and, as they had not personally assumed to pay the debt, no such order could be rightfully made. It will be time enough to complain when the court shall assume to make such a decree. We can not anticipate the court will order an execution in a case where it would be inequitable to do so.

Respondent Kennedy filed a cross-petition, in which he alleges he made repairs on the engine and furnished materials,

and made a box to be used in connection with the other machinery in hoisting coal from the mines, and asks that a lien be established in his favor for the value of the labor performed and materials furnished. Objection is taken that boxes used as this one was, constitute no part of the realty. This position seems to us to be untenable. These boxes are a necessary and indispensable part of the machinery for raising coal. Connected, as they are, with other machinery attached and made part of the realty, they become a part also. What reason can be assigned why such boxes, when so connected, are not as much a part of the realty as any revolving or other movable part of the engine, which, when attached to the soil, is a part of it? No distinction can be taken. Such boxes are a part of one system of machinery, each part being indispensable to the working of the other, and without which other parts would be utterly valueless for the purposes intended.

The decree is warranted by the law and the evidence, and must be affirmed.

*Decree affirmed.*